Filed 8/20/24  P. v. Caguiat CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100009 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F01924) |
| v. | |
| RICHARD SUBA CAGUIAT, | |
| Defendant and Appellant. | |

Defendant Richard Suba Caguiat appeals from the trial court's July 2023 resentencing order.  His appointed counsel asked this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Caguiat filed a supplemental brief raising multiple arguments, including that the trial court abused its discretion during resentencing and erred in failing to recalculate his custody credit.  We will remand the matter for the trial court to recalculate Caguiat's custody credit, but otherwise affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In March 2010, Caguiat and a companion impersonated police officers and then forced their way into the victims' home. A family was inside, including two adult men and two adult women. Caguiat and his companion held three of the family members on the floor at gunpoint and stole property from the victims. Caguiat also assaulted one of the adult women with a gun. The second adult woman was led around the home at gunpoint. Both defendants had guns, and Caguiat personally used a revolver during the crimes.

In July 2011, Caguiat pled no contest to robbery of an inhabited dwelling (Pen. Code, §§ 211, 213, subd. (a)(1)(A))[1] and assault with a deadly weapon (§ 245). He also admitted a firearm use enhancement (§ 12022.53, subd. (b)), a prior strike based on a 2006 conviction (§§ 667, subds. (b)-(i), 1170.12), and a prior prison term enhancement based on a 2003 conviction (former § 667.5, subd. (b)). The parties stipulated to a 25-year aggregate prison sentence, as follows: 12 years for the robbery charge (the middle term of six years doubled due to the strike), 10 years consecutive for the firearm enhancement, one year consecutive for the prior prison term enhancement, and two years consecutive for the assault charge (one-third of the middle term doubled due to the strike).

The court sentenced Caguiat according to the plea deal and awarded 612 days' custody credit (533 actual days, plus 79 conduct days). The court also imposed a $5,000 restitution fine (Pen. Code, § 1202.4, subd. (b)), a corresponding $5,000 parole revocation fine (suspended unless parole is revoked) (Pen. Code, § 1202.45), an $80

---

[1] Undesignated statutory references are to the Penal Code.

court operations fee (Pen. Code, § 1465.8, subd. (a)(1)), a $60 criminal conviction assessment fee (Gov. Code, § 70373), and a $10 theft fine (Pen. Code, § 1202.5).

In July 2023, the Secretary of the Department of Corrections and Rehabilitation (Secretary) notified the trial court that Caguiat was eligible for resentencing under former section 1171.1, now section 1172.75.[2] In briefing, the prosecution agreed Caguiat was eligible for resentencing pursuant to section 1172.75. The prosecution also noted Caguiat might argue he was eligible for relief under the following recent changes to the sentencing laws: (1) Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695) and Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731), which modified sections 1170 and 1170.1 to make the middle term the presumptive sentence unless certain circumstances exist, (2) Senate Bill No. 620 (2017-2018 Reg. Sess.) (Stats. 2017, ch. 682), which modified sections 12022.5 and 12022.53 and permitted trial courts to strike firearm enhancements, and (3) Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721).

In a sentencing memorandum, Caguiat requested the court dismiss his prior strike enhancement and the one-year enhancement pursuant to former section 667.5, subdivision (b), and stay the 12022.53, subdivision (b) gun enhancement, for an aggregate sentence of seven years. Alternatively, Caguiat requested that if the court were disinclined to stay the 12022.53, subdivision (b) enhancement, it sentence him to an aggregate sentence of 16 years. Caguiat reasoned that the strike was more than five years old when he pled no contest to the crimes, and that his sentence had already been increased by 10 years based on the firearm enhancement. In addition, Caguiat pointed out that he had participated in rehabilitation programs while in prison, including

---

[2]    Section 1171.1 was renumbered to section 1172.75 by Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 58, § 12).

counseling, Alcoholics Anonymous, and Criminal Gang Members Anonymous. He had also taken acting classes, and he was now older.

The prosecution asked the court to strike the one-year prior prison term but otherwise leave the sentence unchanged. The prosecution argued three robbery charges had been struck as part of the plea deal, as well as a kidnapping for the robbery charge, which carries a life term.

During the sentencing hearing, the trial court noted it had considered all the documentation submitted by both the parties, "[i]ncluding exhibits attached pertaining to post-conviction behavior" and evidence of Caguiat's participation in the gang course. The court had also reviewed the court file, including the probation report. The court denied Caguiat's *Romero*[3] request, noting that Caguiat had felony convictions in 2003, 2005, and then again in 2006, while he was on parole for one of his prior offenses. Caguiat was also on parole when he committed the offenses at issue here. The facts of the current offenses were "extremely egregious," and involved multiple victims, the use of weapons, and multiple offenses. Those additional charges, which were dismissed as part of the plea deal, would have "significantly increased [Caguiat's] potential prison term." In sum, Caguiat "is the kind of person based on his prior criminality who falls within the spirit of the Three Strikes Law."

The court also declined to dismiss the gun enhancement under section 1385 because doing so would endanger public safety and would not be in the furtherance of justice. The court noted that the enhancement resulted in a sentence of more than 20 years, and the court was "require[d] . . . to afford great weight" to such an ameliorating factor. Still, the underlying facts of the case here were "absolutely horrific and extremely

---

[3]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

4

dangerous," and it was fortunate no one had been hurt or killed. In addition, Caguiat's "criminality" was "escalating." The court recognized Caguiat's rehabilitation efforts while in custody, including the acting program and gang course. However, Caguiat also had "numerous" prison rule violations while in custody. In addition, the court expressed concern that Caguiat had not taken courses to learn about the root causes of criminality, how crimes affect victims, or how to learn empathy for others.

The court then sentenced Caguiat to state prison for an aggregate term of 24 years, as follows: 12 years (the middle term of six years doubled due to the strike) for the robbery count, plus 10 years consecutive for the firearm enhancement, and two years consecutive for the assault count. The court granted the original 612 days of custody credit, plus an additional 4,471 days of actual credit, although it deferred further calculation to the Department of Corrections and Rehabilitation. The court also imposed the previous fines and fees.

Caguiat timely appealed.

In March 2024, the trial court denied Caguiat's request to correct the award of actual days of custody credits, pursuant to section 2900.1 and *People v. Buckhalter* (2001) 26 Cal.4th 20. Instead, the trial court directed the Department of Corrections and Rehabilitation to make the calculation. Defense counsel declined to raise this issue on appeal, so that Caguiat may receive *Wende* review.

DISCUSSION

Appointed counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende, supra*, 25 Cal.3d 436.) Advised of his right to file a supplemental brief, Caguiat did so, making multiple arguments including: (1) he was entitled to recall and resentencing under what is now section 1172.75, even though he entered into a stipulated plea, (2) the trial court abused its discretion in declining to strike the gun enhancement and his prior strike, (3) the trial court should have dismissed his

5

robbery conviction in the interest of justice, (4) a five-year term for a prior serious felony enhancement pursuant to section 667, subdivision (a), should have been stricken pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1013, § 1), and (5) the trial court erred in not recalculating his custody credits following the resentencing hearing. Citing *Wheeler v. Appellate Division of Superior Court* (2024) 15 Cal.5th 1193, Caguiat argues we must remand the matter for the trial court to "entertain its new jurisdiction." Caguiat may also be raising an ineffective assistance of counsel claim, which we will address. We agree with Caguiat on the credit issue, but we find his remaining claims without merit.

I

*Caguiat was Entitled to and Received a Full Resentencing Hearing.*

As a preliminary matter, we agree with Caguiat, as did the trial court, that he was entitled to recall and full resentencing pursuant to what is now section 1172.75. That section requires the Secretary to identify and notify the trial court of individuals who have now invalid sentences previously imposed under former section 667.5, subdivision (b), subject to certain exceptions not relevant. (§ 1172.75; see also Sen. Bill No. 483 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 728).) The trial court must recall and resentence such eligible individuals, including applying "any other changes in law that reduce sentences or provide for judicial discretion." (§ 1172.75, subd. (d)(2); see *People v. Carter* (2023) 97 Cal.App.5th 960, 977 ["the Legislature intended that the full resentencing procedure in section 1172.75 should be applied to all sentences, including stipulated sentences imposed as part of a plea bargain"].) The trial court acknowledged this when it stated that "since this is a complete resentencing I will consider the Defense request as to the motion pursuant to *Romero*."

## II

### *Firearm Enhancement and Prior Strike.*

#### A. *Firearm Enhancement*

We turn first to Caguiat's argument that the trial court erred in declining to strike the firearm enhancement. Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) amended section 1385 to add subdivision (c), which provides, in part: A trial court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) In exercising its discretion under subdivision (c)(1), a trial court "shall consider and afford great weight to evidence offered by the defendant" (§ 1385, subd. (c)(2)), to prove one of nine enumerated mitigating circumstances, including whether multiple enhancements are alleged, the application of an enhancement could result in a sentence of over 20 years, the current offense is related to mental illness, and the enhancement is based on a prior conviction that is more than five years old. (§ 1385, subd. (c)(2)(B), (c)(2)(C), (c)(2)(D), & (c)(2)(H).) Proof of one of these mitigating circumstances "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Section 1385 defines " '[e]ndanger public safety' " to mean "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) A trial court is not required to consider any particular factors in determining whether dismissal would endanger public safety. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 299.) We review for abuse of discretion a trial court's decision to not strike an enhancement under section 1385. (*Mendoza*, at p. 298.)

Despite Caguiat's contentions, we disagree the trial court abused its discretion in declining to dismiss the firearm enhancement. As a preliminary matter, we note that, to the extent Caguiat argues there is also new evidence of his mental state during the crimes,

7

he has forfeited this issue because he failed to raise it in the trial court. (See *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1054 ["a party must raise an issue in the trial court if they would like appellate review"].)

Regardless, the trial court already had evidence of at least one ameliorating factor, and it demonstrated it understood its discretion. In explaining why it had decided to keep the enhancement, the court noted that the enhancement resulted in a sentence of more than 20 years, and the court was "require[d] . . . to afford great weight" to such an ameliorating factor. The court also recognized Caguiat's rehabilitation efforts while in custody, including the acting program and gang course. Still, he had not taken courses to learn more about the root causes of criminality or how crimes affect victims. In addition, noted the court, the underlying facts of the case here were "absolutely horrific and extremely dangerous," and Caguiat's criminal record demonstrated an "escalating" pattern of "criminality." Caguiat had committed felonies while on parole for other crimes, including the current offense. Moreover, he also had "numerous" prison rule violations while in custody. It was reasonable for the court to conclude that, even though the firearm enhancement resulted in a sentence greater than 20 years, striking the enhancement would endanger public safety because Caguiat had an escalating pattern of criminality and continued to commit rule violations while in custody. Under the circumstances, we find no abuse of discretion.

*B. Prior Strike*

We also find no merit in Caguiat's contentions that the trial court erred in declining to dismiss his prior strike.

To the extent Caguiat argues the trial court erred because it failed to consider the ameliorative factors in section 1385, subdivision (c), including (1) the age of the prior conviction, (2) that multiple enhancements had been found, and (3) the application of the enhancements resulted in a sentence greater than 20 years, we note that section 1385 does not apply to the court's discretion to dismiss strikes. "The plain language of subdivision

8

(c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement." (*People v. Burke* (2023) 89 Cal.App.5th 237, 244.)  As such, section 1385 does not apply, and the court was not required to consider the ameliorative factors listed in section 1385, subdivision (c) when determining whether to dismiss Caguiat's prior strikes.  (*Burke*, at p. 244.)

Instead, as courts have explained, a trial court must decide whether to strike a prior strike by considering factors that are intrinsic to the Three Strikes law's sentencing scheme.  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  These factors include:  (1) the nature and circumstances of the current conviction; (2) the nature and circumstances of the prior strike conviction; and (3) the defendant's "background, character, and prospects."  (*Ibid*.)  If the defendant falls outside the spirit of the Three Strikes law, the court may, in furtherance of justice, treat the defendant "as though he [or she] had not previously been convicted of one or more serious and/or violent felonies."  (*Williams*, at p. 161; see also *People v. Superior Court* (*Romero*)*, supra*, 13 Cal.4th at pp. 529-530; § 1385, subd. (a).)  We review a trial court's denial of a *Romero* motion for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373.)

We find no abuse of discretion in the trial court's decision to decline to strike Caguiat's strike.  The court properly considered the nature and circumstances of the current convictions, which involved a violent and dangerous home invasion robbery.  It also considered Caguiat's character, including his efforts at rehabilitation during incarceration.  The court also considered Caguiat's history of criminality, including that he repeatedly committed new felonies while on parole, and that he had rule violations while in custody.  (*People v. Philpot* (2004) 122 Cal.App.4th 893, 906 ["the court could not overlook the fact defendant consistently committed criminal offenses"].)  It was reasonable for the court to conclude that these circumstances supported imposition of the 24-year sentence, including the strike.

## III

### *The Robbery Charge*

Caguiat argues the trial court should have dismissed the robbery charge in the interest of justice. Citing *U.S. v. Dixon* (2015) 805 F.3d 1193, he argues there have been "changes to the understanding of robberies/carjacking in general" and appears to argue those changes render California's robbery statute illegal. We first note that Caguiat failed to make this request before the trial court, but his contention is easily dismissed, and we therefore address it. Given that *U.S. v. Dixon* only addresses whether that defendant's two prior robbery convictions under section 211 qualified as violent felonies pursuant to the federal Armed Career Criminal Act of 1984 (18 U.S.C. § 924(e)), we are not persuaded that this case addresses whether it was in the interest of justice to dismiss Caguiat's punishment for robbery under California law.

## IV

### *Enhancement Pursuant to Section 667, subdivision (a)*

Caguiat contends he is entitled to the relief provided in Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1013, § 1), which gave a trial court the discretion to dismiss a five-year prior serious felony enhancement. However, our review of the record, both the oral transcript of the resentencing hearing and the relevant abstract of judgment, reflects that the court did not impose a five-year term for a prior serious felony enhancement pursuant to section 667, subdivision (a), therefore we find no merit in Caguiat's argument that we must modify the sentence to strike such a term.

## V

### *Ineffective Assistance of Appellate Counsel*

Without pointing to any evidence, Caguiat argues there is a "clear conflict of interest" between himself and his appellate counsel. To the extent Caguiat is arguing his appellate counsel has provided ineffective assistance, we note that, to establish a claim of ineffective assistance of counsel, a defendant must prove both deficient performance and

prejudice. (*People v. Mai* (2013) 57 Cal.4th 986, 1009-1010.) Caguiat has failed to make any claim that his appellate counsel's conduct fell below professional standards or prejudiced him in any way, and we thus deny his claim.

## VI

### *The Trial Court Erroneously Failed to Recalculate Custody Credits*

Caguiat properly notes that, despite appellate counsel's request to do so, the trial court erroneously declined to recalculate the actual time he had served pursuant to the sentence for which he was being resentenced and reflect those credits in the new abstract of judgment. We agree with Caguiat. Our Supreme Court in *People v. Buckhalter*, *supra*, 26 Cal.4th at page 37, determined that when a trial court resentences a defendant on remand, it must credit him or her with all actual days he or she spent in custody (whether in jail or prison) up to that time, including his or her time in custody after the original sentencing. We will remand the matter for the trial court to calculate this credit.

## VII

### *Review of the Record*

In appeals from denial of postconviction relief, as here, the appellate court may conduct independent *Wende* review in its discretion. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 226, 230-232.) We will conduct such a review here because appointed counsel failed to mention *Delgadillo* to Caguiat, making it possible Caguiat could have concluded that this court would conduct an independent review of the record, even absent a supplemental brief. (*Id*. at p. 233.)

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to Caguiat.

11

## DISPOSITION

The matter is remanded for the limited purpose of recalculating the actual days of credits for which Caguiat is eligible on his resentencing.  The trial court is directed to prepare an amended abstract of judgment setting forth the modified credits and to forward a certified copy to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.

/s/
EARL, P. J.

We concur:

/s/
HULL, J.

/s/
RENNER, J.

12